IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERMOT MCDONNELL, | No. 4:20-CV-00242 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| OVERHEAD DOOR COMPANY, | |
| Defendant. | |

**MEMORANDUM OPINION**

**FEBRUARY 9, 2022**

## I. BACKGROUND

Dermot McDonnell sued his former employer, Overhead Door Company, under the Family and Medical Leave Act of 1993 ("FMLA"). Overhead answered McDonnell's complaint without moving to dismiss. And after discovery closed, Overhead moved for summary judgment.

Overhead's motion for summary judgment is now ripe for disposition; for the reasons below, it is granted.

## II. DISCUSSION

### A. Standard of Review

I begin my analysis with the standard of review that undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate

and dispose of factually unsupported claims or defenses."[1]  The Supreme Court of the United States has advised that Federal Rule of Civil Procedure 56 "should be interpreted in a way that allows it to accomplish this purpose."[2]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4]  A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5]  And a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[6]

A judge's task when "ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7]  Thus, if "the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the

---

[1]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[2]  *Id.* at 324.
[3]  Fed. R. Civ. P. 56(a).
[4]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[5]  *Clark*, 9 F.3d at 326.
[6]  *Id.*
[7]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8]

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."[9] Part of the judge's role at this stage is to ask "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[10] In answering that question, the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[11] The evidentiary record at trial will typically never surpass what was compiled during discovery.

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[12] For example, while "at the motion-to-dismiss stage of proceedings a district court is obligated to accept the allegations in a plaintiff's complaint as true, it does not accept mere allegations as true at the summary judgment stage."[13] The moving party must identify those portions of the

---

[8] *Id.*
[9] *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252 (alterations in original)).
[10] *Liberty Lobby*, 477 U.S. at 252 *(*quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)) (alteration and emphasis in original).
[11] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[12] *Celotex*, 477 U.S. at 323.
[13] *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 330 (3d Cir. 2016).

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[14]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[15]

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (1) citations to particular parts of materials in the record that go beyond mere allegations; (2) a showing that the materials cited do not establish the absence or presence of a genuine dispute; or (3) a display that an adverse party cannot produce admissible evidence to support the fact.[16]

Summary judgment is effectively "put up or shut up time" for the nonmoving party.[17]  When the movant properly supports his motion, the nonmoving party must show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[18]  The nonmoving party will not withstand summary judgment if all

---

[14]  *Id.* (internal quotations omitted).
[15]  *Id.*
[16]  Fed. R. Civ. P. 56(c)(1).
[17]  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).
[18]  *Liberty Lobby*, 477 U.S. at 250.

it has are "assertions, conclusory allegations, or mere suspicions."[19]  Instead, it must "identify those facts of record which would contradict the facts identified by the movant.'"[20]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the Court may "consider the fact undisputed for purposes of the motion."[21]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[22]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[23]  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[24]

### B.    Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts.

In 1986, McDonnell began working for Overhead as an assembler.[25]  But in May 2019, Overhead eliminated McDonnell's position.[26]  Instead of terminating

---

[19] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[20] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[21] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).
[22] Fed. R. Civ. P. 56(c)(3).
[23] *Liberty Lobby*, 477 U.S. at 249.
[24] *Id*. at 249–50 (internal citations omitted).
[25] Doc. 25 at ¶ 1.
[26] *Id.* at ¶ 4.

McDonnell, Overhead transferred him to its Section Assembly Department, where he had received training and filled in over the years.[27] McDonnell was not happy about this transfer.[28]

Before reporting to his new position, McDonnell called off on May 7, 8, and 9, 2019.[29] McDonnell also had scheduled a vacation day on May 10, 2019.[30] On May 13, 2019, McDonnell started working in his new position in the Section Assembly Department.[31]

McDonnell continued working on May 14, 2019.[32] He also worked half a day on May 15, 2019, taking the rest of the day off in unpaid personal time.[33] He had scheduled vacation on May 16 and 17, 2019.[34]

McDonnell returned to work on May 20, 2019, his last day at work.[35] Until May 28, 2019, McDonnell used paid time off he had accrued.[36] But when McDonnell did not report to work on May 29 and 30, 2019, Overhead terminated his employment.[37]

---

[27] *Id.* at ¶¶ 3, 5–6.
[28] *Id.* at ¶ 7.
[29] *Id.* at ¶ 8.
[30] *Id.*
[31] *Id.* at ¶ 9.
[32] *Id.* at ¶ 17.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at ¶ 18.
[37] *Id.*

Under Overhead's Attendance Improvement Policy, "'Job Abandonment' results in automatic termination after the end of the second (2nd) consecutive day of absence (your scheduled working hours) without you personally contacting your supervisor or calling the call-in line to report reason for absence."[38] McDonnell had signed and acknowledged that he understood this policy.[39]

### C. Analysis

#### 1. Failure to Accommodate

McDonnell alleges that Overhead "provided no reasonable accommodation at all" and that "[t]he failure . . . to provide a reasonable accommodation . . . constitutes a violation of the Family Medical Leave Act of 1993."[40] But "reasonable accommodation is inapplicable in the context of an FMLA claim."[41] Accordingly, Overhead's motion for summary judgment is granted as to McDonnell's failure-to-accommodate claim.

#### 2. Interference

McDonnell also alleges that he "requested leave pursuant to the Family Medical Leave Act" and that Overhead failed "to comply with the provisions of the

---

[38] Doc. 25, Ex. 5 at 5.
[39] *Id.* at 6.
[40] Doc. 1 at ¶¶ 10, 16.
[41] *Baker v. Hunter Douglas Inc.*, 270 F. App'x 159, 162 (3d Cir. 2008) (affirming summary judgment in employer-defendant's favor) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 384 (3d Cir. 2002) ("[T]he FMLA does not require 'an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave.'")).

Family Medical Leave Act."[42]  "To make a claim of interference under the FMLA, a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA."[43]

Here, the parties dispute the latter three elements.  I address each in turn.  In sum, McDonnell does not adduce evidence creating genuine disputes of material fact as to any of these three elements.  So Overhead's motion for summary judgment is granted as to McDonnell's FMLA interference claim.

### a. Entitlement

An employee is entitled to FMLA leave if he has "a serious health condition that makes the employee unable to perform the functions of the position of such employee."[44]  "For purposes of FMLA, serious health condition entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115."[45]

---

[42] Doc. 1 at ¶¶ 9, 16.
[43] *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).
[44] 29 U.S.C. § 2612(a)(1)(D).
[45] 29 C.F.R. § 825.113(a).

Under 29 C.F.R. § 825.114, "[i]npatient care means an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care." But McDonnell has not adduced evidence of an overnight stay in a hospital, hospice, or residential medical care facility. Thus, he has not shown a serious health condition involving inpatient care.

As for continuing treatment by a health care provider, 29 CFR § 825.115 requires "incapacity and treatment" or "a chronic serious health condition." In a qualifying "incapacity and treatment," the "first (or only) in-person treatment visit must take place within seven days of the first day of incapacity."[46] Though McDonnell allegedly experienced anxiety and a nervous breakdown when performing his new position on May 13 and 14, 2019,[47] he did not seek medical care for his condition until the "end of May, early June."[48] This indicates that more than seven days elapsed between the first day of McDonnell's incapacity and his first in-person treatment. Moreover, McDonnell does not adduce evidence that he sought treatment within seven days of his first day of incapacity. So he has failed to show incapacity and treatment.[49]

---

[46] 29 C.F.R. § 825.115(a)(3).
[47] Doc. 1 at ¶¶ 7–9.
[48] McDonnell Dep. at 85.
[49] *Giddens v. UPS Supply Chain Sols.*, 610 F. App'x 135, 138 (3d Cir. 2015) (affirming summary judgment in employer-defendant's favor because plaintiff "had failed to raise a question of fact with respect to whether he suffered from a serious health condition because his December 28 doctor visit took place outside the seven days permitted under the statute").

Under 29 C.F.R. § 825.115(c), a "chronic serious health condition . . . requires periodic visits (defined as at least twice a year) for treatment by a health care provider."[50] But at his February 2021 deposition, McDonnell testified that he had not "been down there" to see his health care provider since his visit at the "end of May, early June" of 2019.[51] Because McDonnell has not adduced evidence that he visited a health care provider twice a year to treat his anxiety and depression, he has not shown a chronic serious health condition.[52] And by failing to show a serious health condition involving inpatient treatment, incapacity and treatment, or periodic visits, McDonnell fails to show that he was entitled to FMLA leave.

### b. Notice

Even if McDonnell was entitled to FMLA leave, he did not notify Overhead of his intention to take such leave on May 29 and 30, 2019. The United States Court of Appeals for the Third Circuit addressed notice in *Alkins v. Boeing Company*.[53] There, Alkins "did not return to work after a period of leave."[54] "Nor did he call in his absences, as he was required to do by the Last Chance Agreement."[55] "[A]t the time of the adverse employment action, Alkins had not given Boeing notice of his

---

[50] 29 C.F.R. § 825.115(c)(1).
[51] McDonnell Dep. at 85.
[52] *Watkins v. Blind & Vision Rehab. Servs. of Pittsburgh*, No. 2:16-CV-01850, 2018 WL 4491162, at *5 (W.D. Pa. Sept. 19, 2018) (granting employer-defendant summary judgment on FMLA claim because "there is insufficient evidence to show plaintiff visited a health care provider twice a year for treatment").
[53] 826 F. App'x 172 (3d Cir. 2020).
[54] *Id.* at 173.
[55] *Id.*

intention to extend his leave."[56]  "His FMLA interference claim therefore fail[ed]," and the Third Circuit affirmed summary judgment in Boeing's favor.[57]

Like Alkins, McDonnell did not return to work after taking leave until May 28, 2019.[58]  Nor McDonnell did not call in his absences on May 29 or 30, 2019, as Overhead's Attendance Improvement Policy required.[59]  Indeed, McDonnell has not adduced evidence that he communicated with Overhead between the start of his leave on May 20, 2019, and his termination on May 30, 2019.  Thus, McDonnell did not notify Overhead of his intention to extend his leave to May 29 and 30, 2019.

McDonnell counters that he asked Maggie Young, Human Resources Representative for Overhead, for FMLA leave on May 14, 2019, before he took leave which extended through May 28, 2019.[60]  But this does not show that McDonnell "request[ed] FMLA leave for the subject absences,"[61] May 29 and 30, 2019.  In the absence of evidence to the contrary, there is no genuine dispute that McDonnell failed to notify Overhead of his intention to extend his leave to May 29 and 30, 2019.  Thus, McDonnell's FMLA interference claim fails.

---

[56]  *Id.* at 174.
[57]  *Id.* at 174–75.
[58]  Doc. 25 at ¶ 18.
[59]  *Id.*
[60]  Docs. 1 at ¶ 9; 30 at ¶ 18; 31 at 2, 5.  *See also* McDonnell Dep. at 50, 60–61, 83.
[61]  *Phinizy v. Pharmacare*, 569 F. Supp. 2d 512, 524 (W.D. Pa. 2008) (granting employer-defendant summary judgment because plaintiff did not give notice of intention to take FMLA leave).

### c. Denial

Finally, McDonnell fails the fifth FMLA interference element as well. As I explained above, McDonnell has not adduced evidence that he was entitled to FMLA leave for a serious medical condition that involved inpatient care or incapacitated him. Nor has McDonnell adduced evidence that he notified Overhead of his intention to take FMLA leave on May 29 and 30, 2019. Accordingly, McDonnell has not demonstrated that Overhead denied him benefits to which he was entitled under the FMLA.

### III. CONCLUSION

The FMLA does not require employers to provide reasonable accommodations. And McDonnell has not adduced evidence that he was entitled to FMLA leave, gave adequate notice of his intention to extend his leave to May 29 and 30, 2019, or was otherwise denied benefits under the FMLA. Accordingly, Overhead's motion for summary judgment is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge